**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50602**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 24, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| DAVID LAWRENCE RANDALL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction and unified life sentence, with a minimum period of confinement of twenty-five years, for first degree murder, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant. Sally J. Cooley argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

LORELLO, Judge

David Lawrence Randall appeals from his judgment of conviction and unified life sentence, with a minimum period of confinement of twenty-five years, for first degree murder. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Randall and the victim were in a dating relationship. In 2019, officers conducted a welfare check on the victim based on a report from her son. Officers located the victim's vehicle at Randall's residence. When officers made contact with Randall, he was in a deteriorated state due to a suspected drug overdose. Officers observed that Randall's hands were "caked with dried blood" and that he also had dried blood on his legs, face, and hair. At the scene, officers found the living room floor was "covered in blood in the form of drops, small puddles, smears, and swipes."

1

The blood patterns indicated "a great deal of trauma and movement, suggesting the scene of a protracted battle." The victim's body was found on Randall's couch positioned on her back with her arms folded onto her abdomen. The victim's face was covered in blood and heavily bruised and there were numerous puncture marks on her cheeks and around her eyes. The left side of the victim's temple was deformed as if struck by a heavy object and her left earlobe was partially torn off. Further examination revealed the victim sustained more than fifty superficial and deep puncture wounds to her face and head, multiple rib fractures with acute hemorrhage, several blunt-force traumatic wounds attributed to blows from a drumstick[1] and screwdriver, and defensive-type wounds to her upper extremities. The cause of death was deemed "traumatic blunt-force and sharp-force injuries and manual strangulation" with an "asphyxia component related to smothering."

Randall was charged with first degree murder, the public defender was appointed to represent him, and Randall was ordered to submit to a competency evaluation. The competency evaluator determined that Randall did not have either the capacity to understand the proceedings against him nor the capacity to assist in his own defense. Accordingly, Randall was found incompetent and committed to the Idaho Department of Correction Security Medical Program. Three months later, Randall's competency was deemed restored and he was discharged from the program. Thereafter, a grand jury indicted Randall on one count of first degree murder under three alternative theories: premeditation, torture murder, and felony murder. The indictment also alleged a deadly weapon enhancement.

Randall filed a notice of intent to produce evidence pursuant to I.C. § 18-207, which governs introduction of mental health evidence in criminal cases. After Randall's expert provided his report, the State moved to exclude the expert's proposed testimony at trial on the grounds that it failed to satisfy the legal standard set forth in I.C. § 18-207. Randall's public defender objected to the State's motion. Prior to the district court ruling on the State's motion, Randall retained private counsel. Retained counsel moved to continue the trial (which the district court granted) and withdrew Randall's objection to the State's motion to exclude. About a month later, retained

---

[1]     Randall described himself as an accomplished drummer. He had a drum set in his home and reported that he regularly played the drums.

counsel represented to the district court that he had hired a different expert to offer testimony at trial pursuant to I.C. § 18-207.

Thereafter, Randall again moved to continue the trial in order to obtain an expert witness. In the motion, retained counsel clarified that he elected to withdraw the objection to the State's motion because, after review, he determined the State's arguments that the expert's report and opinion did not satisfy the standard of I.C. § 18-207 were valid. However, retained counsel also expressed his belief that a new I.C. § 18-207 defense could be presented if it were substantiated by the right expert and opinion. Retained counsel also requested funding to hire a forensic psychiatrist to present evidence under I.C. § 18-207. The district court denied Randall's request for funding after finding that Randall: expressly waived the right to pursue a I.C. § 18-207 defense; failed to provide timely notice of his intent to re-raise the defense as required by I.C. § 18-207(4)(a)[2]; failed to establish good cause for an extension of the statutory deadline; and failed to articulate a factual basis giving rise to the defense and supporting the need for funding for an expert. The district court also denied Randall's second motion for a continuance.

Pursuant to a plea agreement, Randall subsequently pled guilty to first degree felony murder. I.C. §§ 18-4001, 18-4003(a), and 18-4003(d). In exchange for Randall's plea, the State dismissed the deadly weapon enhancement and agreed to recommend a unified life sentence, with a minimum period of confinement of twenty-five years. Because Randall expressed reservations about admitting he intentionally stabbed the victim, retained counsel prepared a script for Randall to use during entry of his guilty plea. Randall recited the following script during his guilty plea:

> On or about December 15th, 2019, in Ada County, Idaho, I intentionally attempted to injure [the victim] by disfiguring her with a screwdriver when I stabbed the screwdriver near her face and in the process she died.

Retained counsel believed the script would alleviate Randall's hesitations, provide the district court with the necessary factual basis, and satisfy the elements of felony murder. However, the district court was not satisfied with Randall's allocution and asked him whether he willfully and intentionally stabbed the victim. Retained counsel interjected and the parties had a side-bar

---

[2]     Idaho Code Section 18-207(4)(a) provides that a defendant seeking to assert a defense pursuant to I.C. § 18-207 must give notice "at least ninety days in advance of trial." The defendant must also, on a schedule set by the district court, "furnish to the opposing party a written synopsis of the findings of such expert, or a copy of a written report." I.C. § 18-207(4)(b).

3

conference regarding Randall's statement. Following the side-bar, retained counsel explained to Randall that, if he wanted to plead guilty, he would have to state that he intended to stab the victim with the screwdriver. Retained counsel also told Randall that he did not have to say those words if he did not want to plead guilty. Thereafter, the hearing resumed and retained counsel informed the district court that Randall was prepared to enter a factual basis for his guilty plea. Retained counsel asked Randall whether he intended to stab the victim with a screwdriver, to which Randall replied, "Yes, I intended to stab her with a screwdriver." Retained counsel further asked Randall, "to your understanding at this point, did you injure [the victim's] eye or ear in this incident?" Randall responded, "Yes." The State indicated it was satisfied with Randall's admissions and provided its own factual basis detailing the injuries the victim sustained. The district court again asked Randall if he wished to plead guilty, to which Randall affirmed that he did. The district court accepted Randall's guilty plea and scheduled the sentencing hearing.

Approximately four months after Randall entered his guilty plea, but prior to sentencing, Randall's retained counsel moved to withdraw, citing a "breakdown in communication" and asserting Randall's objectives "raised ethical concerns." According to retained counsel, Randall "expressed anger and dissatisfaction" with retained counsel for eliciting Randall's admission that he stabbed the victim with a screwdriver. Randall alleged that he did not remember stabbing the victim and further asserted that retained counsel coerced Randall into pleading guilty. The district court granted retained counsel's motion to withdraw and re-appointed a public defender to represent Randall.

Two months later, the public defender filed a motion to withdraw Randall's guilty plea, asserting retained counsel "made some strategic decisions that severely limited [Randall's] ability to properly defend himself at a jury trial," which led to Randall feeling pressured into accepting the plea agreement. In a supporting affidavit, Randall alleged retained counsel convinced Randall that, if he did not plead guilty, he would end up spending the rest of his life in prison. Randall further alleged that, when retained counsel withdrew the I.C. § 18-207 defense, Randall felt like he no longer had a viable defense at trial. Randall averred that, had retained counsel not pressured Randall, he would have elected to proceed to trial. The State objected to Randall's motion and argued that he failed to prove coercion and that Randall's plea was knowing, intelligent, and voluntary. The district court held a hearing on Randall's motion where it heard evidence and

4

argument from both parties, including testimony from his previously retained counsel. Ultimately, the district court denied Randall's motion, finding that his guilty plea was entered knowingly, intelligently, and voluntarily, and that he failed to show just reason for withdrawing his guilty plea. The case proceeded to sentencing and the district court sentenced Randall to a unified life term, with a minimum period of confinement of twenty-five years. Randall appeals.

## II.

## STANDARD OF REVIEW

Whether to grant a motion to withdraw a guilty plea filed prior to sentencing lies in the discretion of the district court. *State v. Lee*, 165 Idaho 254, 259, 443 P.2d 268, 273 (Ct. App. 2019). Appellate review of a sentence is also subject to an abuse of discretion standard. *See State v. Keller*, 108 Idaho 643, 645, 701 P.2d 263, 265 (Ct. App. 1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Randall argues the district court abused its discretion in denying his motion to withdraw his guilty plea prior to sentencing. Specifically, Randall contends the district court "failed to act consistently with the legal standards applicable" and "failed to reach its decision by an exercise of reason" in determining that he failed to show a just reason to withdraw his plea. Randall further asserts the district court abused its sentencing discretion and argues that a life sentence, with a minimum period of confinement of twenty-five years, is excessive under any view of the facts. The State responds that the district court properly exercised reason in denying Randall's motion to withdraw his guilty plea and that the district court did not abuse its sentencing discretion. We hold that Randall has failed to show the district court abused its discretion either in concluding that he failed to provide a just reason to withdraw his guilty plea or in imposing sentence.

## A.    Motion to Withdraw Guilty Plea

A defendant moving to withdraw a guilty plea prior to sentencing bears the burden of establishing a reason to permit withdrawal of the plea. *State v. Sunseri*, 165 Idaho 9, 13, 437 P.3d 9, 13 (2018). The first step in analyzing a motion to withdraw a guilty plea is to determine whether the plea was knowingly, intelligently, and voluntarily made. *Id.* at 14, 437 P.3d at 14. If the plea is constitutionally valid, the court must then determine whether there are any other reasons for withdrawal of the plea. *Id.* The district court determined that Randall's plea was knowing, intelligent, and voluntary. Randall does not challenge this factual finding on appeal. Rather, Randall contends he otherwise had a just reason to withdraw his plea. On appeal, our role is to determine whether the district court abused its discretion in finding that Randall failed to show a reason to withdraw his plea. *See id.* For the following reasons, we conclude that Randall has failed to show the district court abused its discretion.

In his motion to withdraw his guilty plea, Randall argued the reason he should be permitted to withdraw his guilty plea was because retained counsel made "some strategic decisions that severely limited [Randall's] ability to properly defend himself at a jury trial, namely waiving his [I.C.] § 18-207 defense." Randall asserted he felt pressured and coerced into pleading guilty after retained counsel told Randall that "he would spend the rest of his life in prison if he did not plead guilty." Because Randall believed retained counsel waived Randall's "only real affirmative defense," he argued "he had no other choice and bowed to the advice and pressure of his counsel to enter a guilty plea." The district court held a hearing on the motion at which Randall did not testify. Instead, Randall, who was again represented by the public defender at the time of the hearing, called two witnesses--the attorneys he retained to represent him in between the periods in which he was represented by the public defender's office. Retained counsel testified about the circumstances surrounding Randall's ultimate decision to plead guilty and his reasons for making that decision. For its part, the State called one witness at the hearing--a sheriff's deputy who provided foundation for the admission of evidence of Randall's communications to friends and family members while he was incarcerated. Those communications consisted of letters and phone calls in which Randall made several statements that, among other things, described his decision to plead guilty and his regret in doing so. Following the hearing, the district court took the motion under advisement and subsequently issued a written decision.

In its written decision, the district court determined Randall's claim that his guilty plea was coerced was conclusory and contradicted by the evidence admitted at the hearing. More specifically, the district court found Randall's arguments "simply not credible given his pre and post-communications with his friends and family regarding his decision to plead guilty and his subsequent regret in doing so." The district court recounted those communications, which included Randall: (1) discussing the "countless hours of meeting with" his retained counsel about his decision to plead guilty; (2) explaining that he pled guilty based on retained counsel's "advice that he would have a better chance at a more favorable sentence rather than if he were convicted by a jury"; and (3) stating he "wanted to spare his and [the victim's] friends and family from going through trial." These communications demonstrated to the district court that, while it was by no means an easy decision, it was Randall's decision to plead guilty and his subsequent regret "was not because he believed he was coerced, but because he feared he would not receive a more favorable outcome at sentencing than if he proceeded to trial." The evidence admitted at the hearing also included the transcript of Randall's guilty plea hearing and his guilty plea advisory form. Both the transcript and the form reflect Randall's assertions that he was not pressured or coerced into pleading guilty. Accordingly, the district court found there was no evidence Randall was coerced and deemed his assertion that he was pressured into pleading guilty not credible.

Stated differently, the district court squarely rejected the reason Randall gave in support of his request to withdraw his guilty plea (coercion) because it was contrary to the evidence of the actual reason Randall pled guilty (primarily to take advantage of the plea offer) and was contrary to his prior statements that he was not coerced. The district court acted within the bounds of discretion and exercised reason in rejecting Randall's claim that his guilty plea was coerced. *See Lee*, 165 Idaho at 259, 443 P.3d at 273 (rejecting claim that district court failed to exercise reason in denying his motion to withdraw his guilty pleas where claim was contradicted by the record made at the time guilty pleas were entered and no evidence at hearing on motion to withdraw pleas demonstrated coercion).

The district court's findings and its rejection of Randall's claimed reason for pleading guilty ends the "just reason" inquiry because if the reason itself is contradicted by the record, it is unnecessary to decide whether the reason is just. Even assuming an analysis of whether Randall's reason was "just" is required despite the district court's rejection of the reason itself, he has failed

to show any error in the district court's analysis of the "just reason" factors articulated by the Idaho Supreme Court in *Sunseri*. The *Sunseri* factors include: (1) whether the defendant has credibly asserted his or her legal innocence; (2) the length of delay between the entry of the guilty plea and the filing of the motion; (3) whether the defendant had the assistance of competent counsel at the time of the guilty plea; and (4) whether withdrawal of the plea will inconvenience the court and waste judicial resources. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14.

Following the hearing on Randall's motion to withdraw his guilty plea, the district court made the following relevant factual findings: (1) Randall failed to meet his burden of credibly asserting his legal innocence; (2) Randall waited four months after pleading guilty to inform retained counsel he wanted to withdraw his plea and six months to actually file his motion; (3) Randall had competent[3] counsel at the time of his guilty plea; (4) permitting Randall to withdraw his plea would cause a substantial inconvenience; and (5) this case "is an example of belated misgivings." On appeal, Randall challenges each of the district court's findings; we will address each of his arguments in turn.

### 1. Credibly asserting legal innocence

The first factor a trial court should consider in determining whether there is a just reason for withdrawal of a guilty plea is whether the defendant has credibly asserted legal innocence. *Id*. When an assertion of innocence is made as a basis to withdraw a guilty plea, the trial court must consider the reason why the defense was not asserted when the defendant pled guilty. *State v. Hanslovan*, 147 Idaho 530, 537, 211 P.3d 775, 782 (Ct. App. 2008). A mere assertion of innocence, by itself, is not grounds to withdraw a guilty plea. *Id*. So long as a factual basis for the guilty plea exists, the trial court may accept a tactical guilty plea even from a defendant who continues to assert his or her innocence. *Id*. Further, the good faith, credibility, and weight of the defendant's assertions in support of a motion to withdraw a guilty plea are matters for the trial court to decide. *Id.*

---

[3]     For clarity, it is important to note that the term "competent" is used by both parties and the district court when evaluating retained counsel's assistance at the time of Randall's guilty plea. Similarly, the Idaho Supreme Court in *Sunseri*, 165 Idaho at 14, 437 P.3d at 14, also refers to counsel's assistance at the time of the guilty plea as "competent." In this opinion, we may use the terms "effective" or "ineffective" when discussing retained counsel's assistance. Regardless of the terminology, the analysis of retained counsel's performance is the same.

The district court found that Randall's potential I.C. § 18-207 defense, jail calls, and letters he wrote while in custody indicated the basis for his assertion of legal innocence--that he did not intend to stab the victim with the screwdriver and/or drumstick. Relying on *United States v. Hamilton*, 510 F.3d 1209, 1214-15 (10th Cir. 2007), the district court determined that Randall failed to present a factual argument that supported a legally cognizable defense. Randall also failed to present clinical evidence indicating he was incapable of forming the requisite intent at the time of the offense. "On that basis alone," the district court found that Randall had "not met his burden of credibly asserting his legal innocence."

The district court further found Randall's claim of innocence was contradicted by the record and lacked credibility. While Randall did not admit to his expert witness, Dr. James Davidson, that Randall intended to stab the victim, the district court found "his description of the encounter [left] little doubt as to intent." Randall admitted to grabbing a drumstick, putting it in the victim's hair and twisting it. Randall also admitted to grabbing a screwdriver and stabbing it toward the victim's head to the point that he "cut her with the screwdriver, so she started bleeding." Randall stated that, although he was not trying to kill the victim, he knew he did damage to her when he saw blood. When asked to describe where he stabbed the victim, Randall stated, "in the face" and "in the eye." While Randall told Dr. Davidson that "it was an accident" and he "had no intention of premeditated murder," he also said that "what killed her is the screwdriver and drumstick." Additionally, while Randall claimed that he did not mean to stab the victim, the district court determined there was no evidence in the record that he did not understand the function of a screwdriver and/or drumstick or the consequences of him using those instruments in the way he did. The district court found these admissions to Dr. Davidson demonstrated that Randall "intentionally injured [the victim] by stabbing her, despite not having such intention when" the victim arrived at Randall's residence.

Finally, the district court found that, during his plea colloquy, Randall "admitted to his intent to stab [the victim] while providing a factual basis for his plea to first degree murder by attempted mayhem." The district court referenced the script Randall recited at the change of plea hearing and also cited Randall's admissions that the victim was stabbed in the eye and ear with the screwdriver and that Randall intended to stab the victim with a screwdriver. Further, the district court found Randall's claim that he felt coerced by retained counsel to admit to these acts "simply

9

not credible." Given his statements made under oath during the plea colloquy, "especially in light of the 'strong presumption of veracity' afforded to his admissions," the district court found that Randall's conclusory assertions of innocence were not credible. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (holding a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea). Accordingly, the district court found that this factor weighed against withdrawal.

On appeal, Randall argues the district court erred in concluding he did not credibly assert his legal innocence because he "provided more than a baseless declaration of innocence" and "had a valid defense that he did not have the necessary mens rea." Specifically, Randall asserts Dr. Davidson's report and anticipated testimony regarding the mens rea defense "established a credible claim of legal innocence." According to Randall, Dr. Davidson was expected to testify that he evaluated Randall and "established the presence of a mental disease/defect that affected whether [Randall] knew that he was 'willfully, unlawfully, deliberately, with premeditation, and with malice aforethought' killing" the victim. Based on his interviews with Randall, Dr. Davidson adduced Randall had "delusional thinking, hallucination, mental disorganization, confusion, and bizarre ideation" which caused him to "grossly misperceive his surroundings" and "threats to himself." Doctor Davidson concluded that Randall "had a thought disturbance characteristic of schizophrenia, paranoid type" and that his "psychotic thought process was present immediately before, during, and immediately after the murder." Doctor Davidson further concluded that "the psychotic thought process profoundly directed [Randall's] thinking." Randall argues that, given the anticipated expert testimony regarding Randall's mental status at the time of the murder, "the question was ripe for a jury decision." We disagree.

Randall's argument that Dr. Davidson's report offered Randall a defense to premeditated murder is irrelevant given that he did not plead guilty to that charge. Randall was indicted on one count of first degree murder under the three alternative theories of premeditation, torture murder, and felony murder by attempted mayhem. Pursuant to the plea agreement, Randall was given the option to choose which theory of first degree murder he wished to plead guilty to. Randall chose to plead to first degree murder under the felony murder theory, with the felony being "in the perpetration of or attempt to perpetrate the crime of mayhem" on the victim. Under the felony murder rule, a defendant who participates in a felony can be held liable for "the death of any person

10

killed during the commission of the felony, regardless of the individual defendant's intent that a death occur." *State v. Windsor*, 110 Idaho 410, 419, 716 P.2d 1182, 1191 (1985). Thus, felony murder does not include any element of intent that death occur. *State v. Pratt*, 125 Idaho 594, 598, 873 P.2d 848, 852 (1994). Instead, the malice aforethought element of felony murder is satisfied by the fact that the killing was committed in perpetration of the felony. *State v. Dunlap*, 125 Idaho 530, 533, 873 P.2d 784, 787 (1993). Mayhem, in turn, is committed when a person "unlawfully and maliciously deprives a human being of a member of" his or her body or "disables, disfigures or renders it useless, or cuts out or disables the tongue, puts out an eye, slits the nose, ear or lip." I.C. § 18-5001. Further, I.C. § 18-101(4) provides that "maliciously" "import[s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." Accordingly, the relevant intent in this case was Randall's intent to "vex, annoy, or injure" the victim making Randall's mental state regarding his premeditation or intent to kill irrelevant.

Randall's reliance on Dr. Davidson's opinion as demonstrating legal innocence is also without basis because Dr. Davidson's opinion did not satisfy the requirements of I.C. § 18-207. Doctor Davidson's report opined:

> [A]s a result of a severe mental disorder or defect, Mr. Randall suffered from a defect in reason and was unable to appreciate the nature and quality or the wrongfulness of his acts at the time of the offense. In other words, at the time of the alleged offense as a result of mental disease or defect, he lacked substantial capacity either to appreciate the criminality/wrongfulness of his conduct or to conform his conduct to the requirements of the law.

However, whether Randall had the "substantial capacity" to "appreciate the criminality/wrongfulness of his conduct or to conform his conduct to the requirements of the law" is not a defense pursuant to I.C. § 18-207 or any other Idaho statute. A mental condition is not a defense to criminal conduct. I.C. § 18-207(1). The only defense authorized by I.C. § 18-207 is to the state-of-mind element of the charged offense. I.C. § 18-207(3). Doctor Davidson did not offer an opinion on this point, and his opinion regarding Randall's alleged inability to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law is not a recognized defense in Idaho. It was partly because of these defects that retained counsel withdrew the objection to the State's motion to exclude Dr. Davidson's testimony at trial that was filed when Randall was represented by the public defender.

11

Even if some aspect of Dr. Davidson's report could be used to support a valid I.C. § 18-207 defense, the evidence in the record undermines Randall's argument that he "had a valid defense that he did not have the necessary mens rea" to be found guilty of felony murder. In his interview with Dr. Davidson, Randall stated that (when the victim arrived at his house to remove some of her property) he felt "a lot of anger and frustration." Randall ignored the victim when she knocked on the front door but, when the victim went to the back door and opened it, Randall took a bamboo training stick used for self-defense. By Randall's self-report, he "poked [the victim] a little bit" but "didn't hit her hard." After Randall asked the victim what she was doing, she responded she was there to pick up her rocking chair and went inside. Randall recalled he then ripped the victim's "Merry Christmas" earrings off and said "somehow" he "ended up on the ground" with the victim where they "started wrestling around" before "what happened, happened." When Dr. Davidson questioned Randall "in detail," Randall added:

> I've never told anyone what happened blow by blow. For some reason I went to the floor, I don't know if she fell down or if I knocked her down, I can't remember. I was trying to pin her. I tried to strangle her with a cord. I smashed a VCR and a ceramic tile over her head. That didn't work, I couldn't flip her over. I could, but I just stopped. And then there was a screwdriver on the table there and I just grabbed it. And then I took the screwdriver and I just started doing this towards her head, but I didn't mean to hit her head. I was not trying to hit her head. I didn't even think I was hitting her, to be honest with you. I just wanted to scare her. That's all I wanted to do, is scare her. I didn't try to hurt her. I just wanted to scare her and in the process I ended up hurting her because of all the things she'd done to me. And I cut her with a screwdriver, so she started bleeding. And I was really surprised by the blood. I had a drumstick there. There was a drumstick there. And I took a drumstick and put it in her hair and twisted it. And I put a drumstick in her hair and twisted her head like this. I took her fingers and broke them. I wasn't real nice. Broke her fingers. All at once. All at once. I took them and bent them back. Kind of an ugly memory. Then what happened, happened, what I didn't mean to do with the screwdriver. I didn't mean to do that. I just was thinking about all the stuff that she had done to me.

(Ellipses omitted).[4]

---

[4]     Doctor Davidson's report includes this excerpted recitation of events from Randall. The recitation appears in quotations marks in Dr. Davidson's report, which also contains intermittent ellipses and have been omitted here. It is unclear whether the ellipses are indicative of pauses or omissions in Randall's recitation.

Randall also told Dr. Davidson that, as the struggle continued, Randall recalled the victim telling him that someone would "find [her] body somewhere" and that he did not want to go to prison. Randall also recalled the victim sat up at one point and said, "I'm dying" and "hospital" before she "crawled up on the couch and died, right in front of" him. Randall admitted that, while he was not trying to kill her, he "was trying to let her know [he] was really, really pissed off about things." Randall also characterized the victim's death as an "accident" and said he had "never done anything like that before." And, when Dr. Davidson asked Randall to describe his "state of mind," he said he "had no idea what [he] was doing" but had a lot of "anger" and "frustration" and was "enraged."

Consistent with Randall's statements to Dr. Davidson, in Randall's correspondence after his guilty plea, he regularly acknowledged he killed the victim. Randall's position was not that he was not guilty of causing the victim's death; it was that he should only be prosecuted for manslaughter and a sentence of ten to fifteen years "at most." It appears that Randall believed manslaughter was the appropriate charge because he claims he did not intend to kill the victim. However, as noted, because Randall pled guilty to felony murder, he did not need to admit an intent to kill. That Randall believes he was entitled to plead to a different charge with a lower maximum sentence undermines his claim that he is legally innocent.

Randall has failed to show the district court erred in concluding he did not have a credible claim of legal innocence that would support withdrawal of his guilty plea.

### 2. Length of delay

The second factor a trial court should consider in determining whether there is a just reason for withdrawal of a guilty plea is the length of delay between the entry of the guilty plea and the filing of the motion. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. The district court found that Randall "waited four months after pleading guilty to inform" his retained counsel that he "wanted to withdraw his plea, and six months to actually file his motion."[5] The district court found this length of delay "far from timely." Based on Randall's copious post-plea communications, the district

---

[5] Although retained counsel testified that Randall started expressing regret about pleading guilty the day after he did so, he had several subsequent discussions with retained counsel about whether to do so. Randall's vacillating position on whether to seek withdrawal is also borne out in his post-guilty plea correspondence with family.

13

court found that the delay was due to Randall's "months-long vacillation over whether he made the correct choice in pleading guilty, which was evidently a tactical decision due to his desire to receive a shorter sentence." Those same post-plea communications support the district court's finding that Randall experienced "buyer's remorse" and was "second-guessing his decision due to fear of the consequences that might befall him at sentencing." Accordingly, the district court determined this factor weighed against withdrawal.

On appeal, Randall asserts the district court erred in its analysis of the length of delay factor, claiming the delay between his plea and the filing of his motion to withdraw was because his retained counsel believed it would be a conflict of interest to move to withdraw the plea. Randall argues he "immediately regretted his guilty plea" by highlighting that he began asking retained counsel about withdrawing the plea the day after the change of plea hearing. Randall contends he "promptly moved to withdraw his plea" and cites *United States v. Bowman*, 348 F.3d 408, 416 (4th Cir. 2003) (holding a delay of three months was not too long and favored the defendant's cause), in support of his argument. However, the district court found the delay between Randall's guilty plea and his motion to withdraw was six months--a finding Randall does not dispute on appeal. This delay was longer than the one deemed permissible by the Fourth Circuit in *Bowman*. Moreover, other courts have deemed delays shorter than six months untimely, disfavoring withdrawal of the guilty plea. *See United States v. Lord*, 915 F.3d 1009, 1015 (5th Cir. 2019) (holding that a delay of "almost six months" was unacceptable); *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (finding a six-week delay significant); *United States v. Rinard*, 956 F.2d 85, 88-89 (5th Cir. 1992) (holding that a sixty-nine-day delay in filing a motion to withdraw a guilty plea weighed against the defendant).

Randall also argues the district court erred in concluding the delay between his plea and the filing of his motion to withdraw was a tactical decision due to his desire to receive a shorter sentence because "no substantial or competent evidence in the record supports such a conclusion." Citing *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008), Randall asserts that, whether the decision to withdraw a guilty plea "was due to an 'apparent motive' or 'tactical decision' has no bearing in the *Sunseri* analysis unless there is evidence that the defendant had information about the sentence." Accordingly, Randall contends the district court's conclusion "was purely speculative" and an abuse of discretion.

14

Randall's argument misconstrues the record and the district court's finding. The district court's conclusion that Randall made a "tactical decision" referred to his choice to plead guilty, not to his decision to file a motion to withdraw his guilty plea. In a letter Randall wrote after he pled guilty, he stated his "heart was saying go to trial and tell your story" but that his "head was saying plead guilty and hopefully get a lesser sentence." Randall acknowledged that fifty "stab wounds in the head with awful photos are very hard to overcome with a jury." Randall concluded that, "in the end, [his] head won out" and he elected to plead guilty. The district court's findings are supported by the record. Randall has failed to show the district court erred in concluding the length of delay in filing the motion weighed against allowing Randall to withdraw his guilty plea.

### 3.     Assistance of competent counsel

The third factor a trial court should consider in determining whether there is a just reason for withdrawal of a guilty plea is whether the defendant had the assistance of competent counsel at the time of the guilty plea. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. Defense counsel's performance may serve as the requisite fair and just reason for withdrawal of a guilty plea only if a defendant demonstrates both that an attorney's performance was deficient and that he or she was prejudiced by it. *United States v. Murphy*, 572 F.3d 563, 568 (8th Cir. 2009). Randall argued his retained counsel's withdrawal of the public defender's objection to the State's motion to exclude, and the subsequent "waiver" of his I.C. § 18-207 defense demonstrates retained counsel was not competent. The district court disagreed and found that Randall's argument overlooked that retained counsel's decision regarding Randall's I.C. § 18-207 defense was tactical. The district court noted that, under *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984), "there is a strong presumption that counsel's performance fell within the wide range of professional assistance." The district court further found that Randall failed to demonstrate retained counsel's decision resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review. *See Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000) (holding counsel's strategic and tactical decisions will not be second-guessed unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review).

Additionally, considering that Randall's admissions and statements to Dr. Davidson could have been used against Randall at trial had retained counsel attempted to use Dr. Davidson in

Randall's defense, the district court could not find any deficiency in retained counsel's tactical decision to withdraw the objection to the State's motion to exclude the I.C. § 18-207 expert opinion. Indeed, the district court found retained counsel's "skepticism of the admission of [the expert witness's] opinion was well founded." The district court further noted that, based on *Sunseri*, the question it was evaluating was whether Randall "had the assistance of competent counsel at the time of the guilty plea." Accordingly, the district court concluded that, for purposes of Randall's motion to withdraw his guilty plea, the actions of his retained counsel "prior to the guilty plea are not relevant" to determining whether Randall received competent counsel in deciding to plead guilty.

The district court also found the record replete with Randall's compliments about his retained counsel's efforts. In his guilty plea advisory form, Randall "indicated he was satisfied with counsel, including the advice given regarding his rights, defenses, and potential consequences of a guilty plea" and that retained counsel did everything Randall asked retained counsel to do. In communications with his friends and family, Randall praised retained counsel for spending "countless hours" discussing the "pros and cons of pleading guilty" and that Randall believed retained counsel had Randall's "best interests in mind." Further, the district court found Randall was "reticent about having to accuse [retained counsel] of being coercive, noting that it might result in [retained counsel] being removed from the case, which [Randall] observed would not be a good situation for him." The district court concluded that, just because the public defender "may have taken a different approach to [Randall's] defense does not render" retained counsel's assistance deficient. Finally, the district court also determined retained counsel's inexperience in defending murder cases carried little weight because defending "a non-capital murder charge is not fundamentally different than defending any other serious felony charge," which retained counsel had experience doing. As such, the district court found retained counsel's competent assistance weighed against withdrawal.

On appeal, Randall contends the district court erred when it analyzed retained counsel's performance at the guilty plea hearing "using the post-conviction standard--whether [retained counsel's] decisions were tactical, and thus could not be ineffective." Randall criticizes the district court's reliance on *Murphy*, 572 F.3d at 568, in analyzing this factor, arguing that "the federal rule and the Idaho Criminal Rule are not analogous." According to Randall, "the federal circuits

evaluate the 'fair and just reason' within a *Strickland*-type two-prong analysis." As such, Randall contends the district court abused its discretion by failing to act consistently with the applicable legal standards because "the federal analysis is akin to a post-conviction standard" and "Idaho appellate courts have never equated the *Strickland* two-prong requirement with Idaho's 'the assistance of competent counsel' factor." Randall's argument is unpersuasive. That *Sunseri*, 165 Idaho at 14, 437 P.3d at 14, does not specifically mention *Strickland*, 466 U.S. at 688-92, as the controlling analytical framework for evaluating counsel's performance at the time a guilty plea is entered does not mean the district court erred by applying the *Strickland* framework. Further, both *Strickland*, 466 U.S. at 688-92, and *Murphy*, 572 F.3d at 568, are persuasive authority, remain good law, and Randall provides no argument as to why this Court should deviate from their respective analyses and holdings. Moreover, Randall does not offer an alternative legal standard for determining whether a defendant moving to withdraw a guilty plea had the assistance of competent counsel at the time of the guilty plea as required by *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. And, although Randall asserted in his motion to withdraw his guilty plea that he was reserving the right to file a post-conviction petition if needed, his questions at the hearing on his motion to withdraw his guilty plea were focused on whether retained counsel made informed decisions in advising Randall with respect to his guilty plea--questions akin to those that would be asked in the post-conviction context. The district court specifically noted at the hearing on Randall's motion to withdraw: "This isn't an ineffective assistance of counsel claim." The district court's application of the *Strickland* standard for deficient performance in assessing Randall's challenge to retained counsel's competency was not error.

Randall also claims the district court erred "by limiting its evaluation of [retained counsel's] competency to the acts of [retained counsel] on the date" Randall entered his guilty plea. Randall cites *United States v. Lough*, 203 F. Supp. 3d 747, 754 (N.D.W. Va. 2016) and *United States v. Yansane*, 370 F. Supp. 3d 580, 588 (D. Md. 2019), and argues whether a defendant had "the assistance of competent counsel is not limited to the hearing at which the defendant enters the guilty plea but also includes the entirety of counsel's representation leading up to the guilty plea." However, Randall's argument misinterprets the district court's findings and his reliance on *Lough* and *Yansane* is misplaced.

17

In *Lough*, the central question presented was whether the defendant's guilty plea was knowing and voluntary where his counsel "failed to inform him that the evidence against him potentially could be suppressed based on" an invalid warrant. *Lough*, 203 F. Supp. 3d at 752. The "gravamen of [the defendant's] argument [was] that he could not have entered a knowing guilty plea because" he was not aware of "the legal events, analysis, and judicial opinions relating to" his case. *Id*. at 754. The court found that the transcript of the defendant's plea colloquy established that he had "close assistance of counsel up to and during the entry of his plea." *Id*. at 752. However, the court determined that, "whether counsel's close assistance was competent and legally adequate" was a separate question. *Id*. The court found that counsel did not make a strategic decision to forgo a motion to suppress in order to obtain a more favorable sentence or other advantage; rather, counsel "failed to reasonably investigate potential challenges to" the warrant. *Id.* at 753. As such, the court concluded that the defendant "did not have close assistance of competent counsel on the issue of whether to move to suppress evidence" in his case. *Id*. at 754. Further, "because he entered his plea without being informed of the state of the law relevant to a potentially dispositive issue in his case," the court concluded the defendant's guilty plea was not made knowingly. *Id*. at 755. As a result, the court granted the defendant's motion to withdraw and vacated his guilty plea. *Id*.

Similarly, in *Yansane*, the factor the defendant focused the most attention on when arguing his motion to withdraw his guilty plea was whether he had the close assistance of competent counsel. *Yansane*, 370 F. Supp. 3d at 585. Specifically, the defendant argued his counsel "failed to advise him of the immigration consequences of a guilty plea and failed to check whether he was a citizen in the first place." *Id*. It was undisputed that the defendant's counsel "did not provide any specific advice to" the defendant regarding the immigration consequences of a guilty plea. *Id*. at 585-86. Thus, the court found there was no dispute that the defendant's counsel failed to advise his noncitizen client that pleading guilty to the charged offense would automatically render him deportable. *Id*. at 586; *see also Padilla v. Kentucky*, 559 U.S. 356, 374 (2010) (holding that an attorney's performance falls below the objective standard of reasonableness when the attorney fails to inform a client whether a guilty plea carries a risk of deportation). Given that the defendant's guilty plea would "almost certainly result in his deportation," and where defendant's counsel could have discovered his client's immigration status "without significant difficulty," the

court found there was a "serious question whether defense counsel's failure to inquire further was deficient." *Yansane*, 370 F. Supp. 3d at 586. As such, the court determined "the close assistance of counsel factor" weighed in favor of permitting the defendant to withdraw his guilty plea. *Id*. at 588.

However, the court also questioned whether the defendant's plea was knowingly entered. *Id*. The district court noted that the defendant "labored under a very significant mistake of fact: he believed he was a United States citizen." *Id*. Because of the defendant's mistaken belief, the court found that, at the time he pled guilty, "he did not understand the immigration consequences he faced upon conviction." *Id*. Ultimately, the court concluded the defendant's "false but reasonable belief that he was a U.S. citizen rendered him incapable of understanding the actual immigration consequences of his guilty plea." *Id*. at 589-90. Consequently, the court found the defendant, "at a minimum, presented credible evidence that raises a serious question whether his plea was entered knowingly." *Id*. at 590. After weighing additional factors, the court granted the defendant's motion to withdraw his guilty plea. *Id*. at 591.

In this case, the district court did not rule out that counsel's performance related to whether a defendant's plea was made knowingly, intelligently, and voluntarily, could serve as just reason for withdrawing a guilty plea. Rather, the district court framed the specific question to be evaluated in analyzing the third *Sunseri* factor--i.e., "whether the defendant had the assistance of competent counsel at the time of the guilty plea." *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. The district court explained at the hearing that "by the time the plea was discussed, th[e I.C. § 18-207] ship had sailed." In other words, the district court focused on the advice to plead guilty given the status of the case at the time Randall elected to do so, rather than deciding an ineffective assistance of counsel claim based on "some decision made six months earlier."[6] Moreover, unlike both *Lough*

---

[6] To the extent retained counsel's withdrawal of the public defender's objection to the State's motion to exclude Dr. Davidson's testimony at trial is pertinent, retained counsel testified about the reasons he did so. In addition to noting that Dr. Davidson's opinion did not comport with the mens rea defense authorized by I.C. § 18-207 and explaining his concern that calling Dr. Davidson as a witness would allow the State to introduce evidence of Randall's multiple incriminating statements that would be "damaging to his defense," retained counsel testified about his efforts to secure other expert testimony. In particular, retained counsel testified that he hired a forensic pathologist, Dr. Todd Gray, and hired Dr. Linda Hatzenbuehler "to look into a possible second

and *Yansane*, the district court in this case determined Randall's plea was knowing, intelligent, and voluntary--a finding Randall does not dispute on appeal. The district court did not err in limiting its analysis of the competence factor to retained counsel's performance at the time Randall entered his guilty plea, and his reliance on both *Lough* and *Yansane* is misplaced.

Randall further argues that the district court erred when it relied upon his compliments about retained counsel's representation in determining that retained counsel could not have rendered deficient performance. Randall asserts his "own opinion of his counsel's legal prowess is not determinative of whether [Randall] had the assistance of competent counsel." Randall attempts to bolster his argument by highlighting comments where the district court questioned retained counsel's competence. However, that the district court relied on Randall's opinion of retained counsel's performance when making its findings was not an abuse of discretion because Randall's opinions were not the district court's sole basis to support its findings. Moreover, Randall's argument that retained counsel's incompetency at the time of the guilty plea weighed in favor of withdrawal was premised on Randall's dissatisfaction with retained counsel's performance. Randall specifically argued that he was dissatisfied with retained counsel's handling of Randall's I.C. § 18-207 defense, asserting that (once the defense was withdrawn) he felt he had no viable defense at trial, which led him to feel coerced into pleading guilty. But, Randall's post-guilty plea communications from jail reveal he was primarily concerned that he paid retained counsel $50,000 for a guilty plea when Randall thought that amount of money entitled him to a trial. In one letter, Randall wrote: "I paid 50k for nothing. If I'm going to die in prison I might as well go down swinging." In another, Randall wrote: "The more I think about it the more upset I get with my lawyers that they told me to plead guilty. I paid him 50k for a trial lawyer dammit."

Randall's post-guilty plea communications also reveal that much of his regret about pleading guilty was not because of retained counsel's performance but was instead because, given

---

[I.C.] § 18-207 defense." Doctor Hatzenbuehler agreed that Dr. Davidson's report "did not meet the [I.C.] § 18-207 criteria." Retained counsel also "consulted with Dr. Camille LaCroix about a second [I.C.] § 18-207 defense" because retained counsel was "still hoping to mount a different [I.C.] § 18-207 defense with a different expert." However, retained counsel explained that, when the district court ruled that "we would not be able to seek a second [I.C.] § 18-207 defense, the flavor of the case changed, the posture of the case changed," and "the possibility of winning at trial diminished greatly."

his age, he did not perceive a meaningful difference between the possibility of fixed life if he went to trial and the State's agreed-upon recommendation of twenty-five years to life such that there was no reason not to take his chances at trial. For example, in one letter dated December 25, 2021, (eleven days after Randall pled guilty), Randall wrote to his son:

> What's the difference if I keep my guilty plea and get sentenced to 25 years or take it to trial and lose and get fixed life. They both have the same results. If I withdraw my guilty plea and go to trial and lose I would probably get a fixed life sentence with no chance of parole.

In another letter dated January 1, 2022, Randall wrote:

> Even though my attorneys advise me to keep my guilty plea I'm still inclined to withdraw it because in my heart and mind the worst I'm guilty of is manslaughter. What's the difference if I lose at trial trying or getting hammered by the judge at sentencing if I keep my guilty plea? To me there is no difference.

Randall also complained about the media coverage portraying him as a murderer because it was "embarrassing"; complained that he did not like that he pled guilty in front of the victim's "rotten son" and "her family"; and complained that he did not like "facing" his sons and telling them he pled guilty. Randall's claim that the district court erred by considering evidence specifically contradicting the allegations raised in his motion to withdraw his guilty plea is unpersuasive. Randall has failed to show the district court erred in its evaluation of counsel's competence against withdrawal.

### 4.     Inconvenience to the court

The fourth factor a trial court should consider in determining whether there is a just reason for withdrawal of a guilty plea is whether withdrawal of the plea will inconvenience the court and waste judicial resources. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. The trial in this case was set for ten days, which the district court found accounted for about three weeks of its calendar. While the length of the trial was not inconvenient per se, the district court found this factor took on additional significance "in this COVID-era, where criminal and civil jury trials have been backed-up for years." The district court determined that it must manage the backlog of cases and that rescheduling Randall's trial "would cause substantial inconvenience" to the district court and all other pending cases. As such, while consideration of this factor was "very minimal compared to the other factors," the district court found it weighed against withdrawal.

21

On appeal, Randall asserts a trial would not inconvenience the district court because there was "nothing about [his] case that would go beyond the typically anticipated use of resources and time." In arguing that his case would be no more burdensome than a typical jury trial, Randall highlights the district court's finding that defense of a noncapital murder charge would not be fundamentally different than defending any other serious felony. Because "every plea withdrawal will use some judicial resources," Randall contends his "right to a jury trial should not be excoriated so flippantly" and that allowing him "to present to the jury a plausible claim of legal innocence should not be deemed inconvenient" or "a waste of judicial resources." However, as discussed above, Randall has failed to show the district court erred in concluding that he failed to credibly assert his legal innocence. Additionally, Randall does not claim error in the district court's finding that rescheduling his trial would cause a substantial inconvenience to other pending cases. Moreover, the district court was clear that consideration of this factor was minimal compared to the other factors. Accordingly, Randall has failed to show the district court erred in weighing the inconvenience factor against withdrawal.

### 5. Other considerations

A trial court may consider other factors in determining whether a defendant has shown a just reason for withdrawing a guilty plea. *Murphy*, 572 F.3d at 568; *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. Additionally, a trial court is encouraged to liberally exercise its discretion in granting a motion to withdraw a guilty plea. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14; *State v. Wyatt*, 131 Idaho 95, 97, 952 P.2d 910, 912 (Ct. App. 1998). Mindful of this guidance, the district court emphasized that the plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same. *See Murphy*, 572 F.3d at 568. The district court concluded that "this case is an example of belated misgivings." The district court found that Randall's guilty plea was knowing, intelligent, and voluntary and with the assistance of competent legal representation. Accordingly, the district court determined that Randall "subsequently had misgivings due to his fear of a harsh sentence" and, "after several months, undertook efforts to withdraw the plea, lodging unsupported and incredible complaints of coercion against" retained counsel for Randall's decision. The district court's conclusion is consistent with many of Randall's post-guilty plea statements, including the following statement in one letter in which

22

Randall wrote: "I made the best decision I thought to plead guilty but now I think that was a big mistake."

The district court also recognized "a hint of gamesmanship" in Randall's motion to withdraw his guilty plea. Randall's public defender indicated to the district court that, if Randall was permitted to withdraw his guilty plea, he intended on pursuing an I.C. § 18-207 defense at trial. The district court therefore concluded that, if it were to allow the withdrawal, it would effectively condone a process by which a defendant, "when faced with a missed deadline for raising a defense, could plead guilty and then seek to withdraw the guilty plea in order to obtain a new deadline." The district court determined that "guilty pleas are not to be treated so flippantly." While the district court recognized the liberal standard to be applied in granting motions to withdraw pleas prior to sentencing, it found the "just reason" standard "demands more than what [Randall] demonstrated." Consequently, the district court determined this factor weighed against withdrawal.

On appeal, Randall argues the district court's concerns regarding "a hint of gamesmanship" are erroneous.[7] Specifically, Randall contends the district court's theory does not present a "rational strategy by competent counsel due to the uncertainty that the [district] court will grant a motion to withdraw the guilty plea." Randall's interpretation of the district court's findings is incorrect. The district court determined Randall's motion to withdraw his guilty plea was primarily based on his regret over pleading guilty. Additionally, the district court was aware Randall intended on renewing his I.C. § 18-207 defense if he was permitted to withdraw his plea and take his case to trial. Had the district court permitted Randall to withdraw his guilty plea, it would have effectively endorsed a practice where future defendants, upon missing a deadline to raise a defense, could plead guilty and then attempt to withdraw that plea to secure a new deadline. The "hint of

---

[7]    In his opening brief, Randall discusses the district court's comment regarding "gamesmanship" in a section entitled: "Other Considerations in Mr. Randall's Case Weigh In Favor Of Withdrawal." Despite its title, that section of Randall's brief does not discuss any other considerations weighing in favor of withdrawal of his guilty plea. It does the opposite--it explains why perceived gamesmanship should not weigh *against* withdrawal. Randall's arguments in his brief on appeal are limited to the *Sunseri* factors. To the extent Randall believes there are other factors the district court should have considered, he has failed to preserve any such arguments for appeal. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (noting that a party waives an issue on appeal if either authority or argument is lacking).

gamesmanship" found by the district court is well-founded. Randall has failed to show the district court erred in weighing this factor against withdrawal.

The district court exercised reason in concluding that Randall failed to satisfy the just reason standard to withdraw his guilty plea. Accordingly, we need not consider Randall's argument that the State did not demonstrate it would suffer substantial prejudice if the motion had been granted. Randall has failed to show that the district court erred in denying his motion to withdraw his guilty plea.

**B.       Sentence Review**

Randall asserts the district court abused its sentencing discretion by failing to adequately consider certain mitigating factors in imposing his sentence--specifically his mental health conditions, the support of his family, and that he "expressed remorse and accepted responsibility for his actions." The State responds that Randall has failed to show the district court abused its sentencing discretion because the district court applied the correct legal standard and imposed a reasonable sentence.

Sentencing is a matter for the trial court's discretion. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett*, 134 Idaho 271, 1 P.3d 299 (Ct. App. 2000); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App. 1989); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App. 1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion in imposing a unified life sentence, with twenty-five years fixed, for Randall's brutal murder of the victim in this case.

## IV.

## CONCLUSION

Randall has failed to show that the district court abused its discretion in denying his motion to withdraw his guilty plea. Randall has also failed to show the district court abused its sentencing

discretion.  Accordingly, Randall's judgment of conviction and sentence for first degree murder are affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.